1
2
3
4
5
6
7
8                        IN THE UNITED STATES DISTRICT COURT
9                     FOR THE NORTHERN DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| ANTHONY PEREZ HERNANDEZ, ) | No. C 09-3457 RMW (PR) |
| ) | |
| Petitioner, ) | ORDER DENYING PETITION FOR |
| ) | WRIT OF HABEAS CORPUS; |
| v. ) | DENYING CERTIFICATE OF |
| ) | APPEALABILITY |
| JAMES WALKER, Warden, ) | |
| ) | |
| Respondent. ) | |
| _____ ) | |

16
17        Petitioner, a state prisoner proceeding pro se, filed an amended petition for a writ of

18  habeas corpus pursuant to 28 U.S.C. § 2254.  The court ordered respondent to show cause why

19  the petition should not be granted.  Respondent has filed an answer addressing the merits of the

20  petition, and petitioner has filed a traverse.[1]  Having reviewed the briefs and the underlying

21  record, the court concludes that petitioner is not entitled to relief based on the claims presented

22  and DENIES the petition.

23
24  _____

25        [1] After respondent filed his answer, petitioner requested and was granted a stay so that he
    could exhaust new claims.  When petitioner filed an amended petition, the court lifted the stay,
26  and issued an order to show cause to the respondent to file an answer.  Instead of filing an
    answer, respondent filed a motion to dismiss the new claims as untimely.  Petitioner filed a
27  combined opposition to the motion to dismiss, and traverse to respondent's original answer.  The
    court ultimately granted respondent's motion to dismiss the new claims as untimely.
28

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\RMW\HC old\HC.09\Hernandez457hc2.wpd

1

**BACKGROUND**

2   Petitioner was charged with six counts of raping his daughter by force.  At a jury trial, the

3   prosecution put on evidence that in 1996, when petitioner's daughter, T.A., was 14-years old,

4   petitioner began having sex with her.  T.A. testified that she never consented or initiated the

5   sexual contact with petitioner, but she also did not resist because she was afraid of petitioner.

6   T.A. also testified that she had previously seen petitioner beat and hit her mother, and, beginning

7   in 1997, petitioner began to abuse T.A. as well.  In 1998, T.A. had a daughter with petitioner.

8   Petitioner's ex-wife testified that petitioner used to abuse her as well.  Petitioner testified on his

9   own behalf, and insisted that T.A. was the sexual aggressor.  Petitioner's defense was that he had

10   a reasonable and good faith belief that T.A. consented to their sexual activities.[2]

11   The jury found petitioner guilty, and also found that petitioner personally inflicted great

12   bodily injury.  The jury also found true a prior conviction, and sentenced petitioner to a term of

13   90 years to life in state prison.  The sentence was imposed consecutively to a six year term

14   petitioner was serving in a separate case.

15   On June 16, 2006, the California Court of Appeal affirmed.  On October 11, 2006, the

16   California Supreme Court denied review.  Petitioner also filed unsuccessful habeas petitions in

17   state court.  Petitioner filed the underlying federal petition on July 27, 2009.

18

**DISCUSSION**

19   A.   Standard of Review

20   This court may entertain a petition for writ of habeas corpus "in behalf of a person in

21   custody pursuant to the judgment of a state court only on the ground that he is in custody in

22   violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

23   Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a district court

24   may not grant a petition challenging a state conviction or sentence on the basis of a claim that

25

26   [2] As all the details of petitioner's crimes are not essential to the disposition of his federal

27   habeas petition, the court has summarized the evidence, and will expand on the facts as needed
in the discussion of the claims.

28

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\RMW\HC old\HC.09\Hernandez457hc2.wpd

2

1  was reviewed on the merits in state court unless the state court's adjudication of the claim

2  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of,

3  clearly established federal law, as determined by the Supreme Court of the United States; or

4  (2) resulted in a decision that was based on an unreasonable determination of the facts in light of

5  the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  The first prong

6  applies both to questions of law and to mixed questions of law and fact, Williams v. Taylor, 529

7  U.S. 362, 384-86 (2000), while the second prong applies to decisions based on factual

8  determinations, Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

9      "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state

10  court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of

11  law or if the state court decides a case differently than [the] Court has on a set of materially

12  indistinguishable facts." Williams, 529 U.S. at 412-13.  A state court decision is an

13  "unreasonable application of" Supreme Court authority, falling under the second clause of

14  § 2254(d)(1), if the state court correctly identifies the governing legal principle from the

15  Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's

16  case." Id. at 413.  The federal court on habeas review may not issue the writ "simply because

17  that court concludes in its independent judgment that the relevant state-court decision applied

18  clearly established federal law erroneously or incorrectly."  Id. at 411.

19      Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination

20  will not be overturned on factual grounds unless objectively unreasonable in light of the

21  evidence presented in the state-court proceeding."  Miller-El, 537 U.S. at 340.

22      In determining whether the state court's decision is contrary to, or involved an

23  unreasonable application of, clearly established federal law, a federal court looks to the decision

24  of the highest state court to address the merits of a petitioner's claim in a reasoned decision.

25  LaJoie v. Thompson, 217 F.3d 663, 669 n.7 (9th Cir. 2000).

26  B.    Petitioner's Claims

27      As grounds for federal habeas relief, in the amended petition, petitioner claims that:

28

1   (1) the trial court erred in failing to sua sponte instruct the jury on the lesser included offense of

2   incest; (2) the trial court erred in denying defense counsel's request to instruct the jury on

3   unlawful sexual intercourse, pursuant to California Penal Code § 261.5; (3) the prosecutor

4   committed misconduct; (4) the trial court erred by admitting evidence of petitioner's prior

5   conduct of domestic and sexual violence; (5) petitioner received ineffective assistance of

6   counsel; (6) the trial court's denial of his Marsden motions deprived petitioner of effective

7   assistance of counsel; (7) the trial court improperly denied admission of a letter that the victim

8   sent to petitioner; (8) the evidence was insufficient to establish that petitioner personally inflicted

9   great bodily injury on the victim, and the trial court erroneously instructed the jury that

10  pregnancy or child birth could constitute great bodily injury.[3]

11          1.      Jury instruction on lesser included offense

12          Petitioner alleges that the trial court should have sua sponte instructed the jury on the

13  lesser included crime of incest because the facts elicited at trial could have supported a

14  conviction of incest rather than of rape.

15          However, federal courts may grant habeas relief only if a state court decision is contrary

16  to, or an unreasonable application of clearly established federal law as determined by the United

17  States Supreme Court.  See 28 U.S.C. § 2254(d)(1).  There is no clearly established federal law

18  regarding the failure of a state court to instruct on a lesser-included offense in a non-capital

19  case.[4]  See Solis v. Garcia, 219 F.3d 922, 929 (9th Cir. 2000) ("the failure of a state court to

20  instruct on a lesser offense [in a non-capital case] fails to present a federal constitutional

21  question and will not be considered in a federal habeas corpus proceeding") (quoting Bashor v.

22  
23          [3] Although respondent briefs a claim that appellate counsel was ineffective, petitioner
    raised that claim in his original petition, but did not raise it in the operative amended petition,
24  nor did petitioner respond to respondent's argument in his traverse.  As such, the court will not
    address it here.
25  
26          [4] While the United States Supreme Court has held the failure to instruct on a
    lesser-included offense in a capital case is constitutional error if there was evidence to support
27  the instruction, see Beck v. Alabama, 447 U.S. 625, 638 (1980), it has not extended this holding
    to non-capital cases.
28  

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\RMW\HC old\HC.09\Hernandez457hc2.wpd

1  Risley, 730 F.2d 1228, 1240 (9th Cir. 1984)); Windham v. Merkle, 163 F.3d 1092, 1106 (9th Cir.

2  1998) ("Under the law of this circuit, the failure of a state trial court to instruct on lesser

3  included offenses in a non-capital case does not present a federal constitutional question.").

4        Thus, because the United States Supreme Court has not addressed the question presented

5  in the petition, the state court's rejection of petitioner's claim was not contrary to, or an

6  unreasonable application of, clearly established United States Supreme Court law.[5]

7        2.    Jury instruction on unlawful sexual intercourse

8        Petitioner claims that the trial court should have instructed the jury on his theory of

9  defense, which was that petitioner engaged in unlawful sexual intercourse rather than committed

10  the crime of rape.  Unlawful sexual intercourse is an act of sexual intercourse between an adult

11  and a minor.  See Cal. Penal Code § 261.5.

12        The California Superior Court rejected this claim.  It concluded that the prosecutor has

13  wide latitude in deciding what charges to bring upon a defendant.  Because the prosecutor did

14  not charge petitioner with unlawful sexual intercourse, explained the Superior Court, the

15  instruction on unlawful sexual intercourse would only have been given if it was a lesser included

16  offense to the crime of rape.  The Superior Court concluded that it was not.  (Docket No. 18, Ex.

17  4 at 3-4.)

18        A state trial court's refusal to give an instruction does not alone raise a ground cognizable

19  in a federal habeas corpus proceedings.  See Dunckhurst v. Deeds, 859 F.2d 110, 114 (9th Cir.

20  1988).  The error must so infect the trial that the defendant was deprived of the fair trial

21  guaranteed by the Fourteenth Amendment.  See id.  Due process requires that "'criminal

22  defendants be afforded a meaningful opportunity to present a complete defense.'"  Clark v.

23

24  _____

25        [5] In addition, respondent correctly notes that the state court rejected petitioner's assertion
    that incest was actually a lesser-included offense of rape because each crime contains elements
26  not necessarily included within the other.  (Docket No. 18, Ex. 4 at 2.)  The question of whether
    one crime is a lesser-included offense of another is generally a state law claim that is not
27  cognizable on federal habeas review.  See Bradshaw v. Richey, 546 U.S. 74, 76 (2005).

28

1   Brown, 450 F.3d 898, 904 (9th Cir. 2006) (quoting California v. Trombetta, 467 U.S. 479, 485

2   (1984)).  Therefore, a criminal defendant is entitled to adequate instructions on the defense

3   theory of the case.  See Conde v. Henry, 198 F.3d 734, 739 (9th Cir. 2000).

4          However, according to state law, petitioner could be guilty of unlawful sexual intercourse

5   and still be guilty of forcible rape.  Unlawful sexual intercourse, in this case, is also not a lesser

6   included offense of forcible rape.  See People v. Chapman, 47 Cal. App. 3d 597, 603-04 (1975).

7   As stated previously, there is no clearly established federal law regarding the failure of a state

8   court to instruct on a lesser-included offense in a non-capital case.  See Solis, 219 F.3d at 929.

9   More importantly, the failure to instruct the jury on unlawful sexual intercourse did not deprive

10  petitioner of a fair trial because unlawful sexual intercourse is not a defense to forcible rape.

11         Accordingly, the state court's rejection of petitioner's claim was not contrary to, or an

12  unreasonable application of, clearly established United States Supreme Court law.

13         3.     Prosecutorial misconduct

14         Petitioner claims that the prosecutor committed misconduct in the following ways: (A)

15  vouching for the credibility of the victim; (B) failing to disclose exculpatory evidence and

16  impeachment material; and (C) supporting false or perjured testimony.

17         First, petitioner argues that in his closing statements, the prosecutor vouched for the

18  credibility of T.A. by continuously stating that she was telling the truth, and petitioner had

19  motive to lie.  (Pet. Memo. at 19-20.)  The Superior Court rejected petitioner's claim in his state

20  habeas petition.  The Superior Court relied upon state law and rejected petitioner's arguments

21  that the prosecutor's statements were the prosecutor's personal opinion, or that they referred to

22  matters outside the record.  (Docket No. 18, Ex. 4 at 4-5.)  Specifically, the Superior Court found

23  that the prosecutor's statements were based on the evidence presented in court, and on

24  reasonable inferences made from such evidence.  (Id. at 6.)

25         As a general rule, "a prosecutor may not express his opinion of the defendant's guilt or

26  his belief in the credibility of [government] witnesses."  United States v. McKoy, 771 F.2d 1207,

27  1211 (9th Cir. 1985).  Improper vouching for the credibility of a witness occurs when the

28

1   prosecutor places the prestige of the government behind the witness or suggests that information

2   not presented to the jury supports the witness's testimony.  United States v. Young, 470 U.S. 1, 7

3   n.3, 11-12 (1985).  To warrant habeas relief, however, prosecutorial vouching must so infect the

4   trial with unfairness as to make the resulting conviction a denial of due process.  Davis v.

5   Woodford, 384 F.3d 628, 644 (9th Cir. 2004).  On the other hand, a prosecutor does not engage

6   in improper vouching when he labels a witness's testimony as lies or fabrication.  See Turner v.

7   Marshall, 63 F.3d 807, 818 (9th Cir. 1995), overruled on other grounds by Tolbert v. Page, 182

8   F.3d 677, 685 (9th Cir. 1999) (en banc).

9          The court cannot say that the state court's rejection of petitioner's claim was contrary to

10   or an unreasonable application of clearly established Supreme Court law.  The challenged

11   statements were based on reasonable inferences from the evidence presented at trial.  The

12   prosecutor's accusations that T.A. was truthful and petitioner was lying were not improper.  See

13   Turner, 63 F.3d at 818.  It was reasonable for the state court to conclude that even if the

14   prosecutor's statements were improper vouching, they did not so infect the trial with unfairness

15   so as to make the conviction a denial of due process.

16          Second, petitioner claims that the prosecutor violated Brady v. Maryland, 373 U.S. 83

17   (1963), by failing to produce an audio tape of T.A.'s initial interview with law enforcement.

18   (Pet. Memo. at 22-23.)  Petitioner argues that the audio tape contained both impeachment and

19   exculpatory evidence.  T.A. had told law enforcement that she was not afraid that petitioner

20   would physically hit her when it came to the allegations of rapes.  (Id. at 22.)  Petitioner further

21   argues that the prosecutor failed to provide audio tapes of interviews between law enforcement

22   and other witnesses.

23          The Superior Court rejected petitioner's claim.  It stated that petitioner failed to

24   demonstrate that exculpatory or material evidence existed within those audio tapes.  (Docket No.

25   18, Ex. 4 at 6.)

26          In Brady, 373 U.S. 83 (1963), the Supreme Court held that "the suppression by the

27   prosecution of evidence favorable to an accused upon request violates due process where the

28

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\RMW\HC old\HC.09\Hernandez457hc2.wpd

1    evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of

2    the prosecution." Id. at 87.  Evidence is material if "there is a reasonable probability that, had

3    the evidence been disclosed to the defense, the result of the proceeding would have been

4    different." Cone v. Bell, 556 U.S. 449, 469-70 (2009).  For a Brady claim to succeed, petitioner

5    must show: (1) that the evidence at issue is favorable to the accused, either because it is

6    exculpatory or impeaching; (2) that it was suppressed by the prosecution, either willfully or

7    inadvertently; and (3) that it was material (or, put differently, that prejudice ensued).  See Banks

8    v. Dretke, 540 U.S. 668, 691 (2004).

9    　　　Respondent argues that even if the tape recorded interviews were not disclosed,

10   petitioner's claim cannot succeed because the recordings were cumulative to evidence that

11   petitioner already possessed.  Respondent alleges, and petitioner does not refute, that petitioner

12   had copies of reports that summarized the police interviews of T.A. and her grandmother.  (Pet.,

13   Exs. 9, 12.)  In opposition, petitioner states that without the tape recorded interviews, petitioner

14   cannot determine what parts of the recordings would be cumulative, relevant or material.  (Reply

15   at 9-10.)

16   　　　It is petitioner's burden to demonstrate that there is a Brady violation.  The mere

17   possibility that undisclosed information might have been helpful to the defense or might have

18   affected the outcome of the trial, does not establish materiality under Brady.  See United States

19   v. Olsen, 704 F.3d 1172, 1184 (9th Cir. 2013); see also Rhoades v. Henry (Baldwin), 638 F.3d

20   1027, 1038-39 (9th Cir. 2011) (no disclosure violation where one of three reports pertaining to

21   the same confession was turned over and the reports not turned over added no details not

22   apparent or available from the other sources).

23   　　　The court concludes that petitioner has not met his burden of showing that the

24   undisclosed tape recordings were non-cumulative, or material.  The state court's rejection of this

25   claim was not contrary to or an unreasonable application of Brady.

26   　　　Third, petitioner argues that the prosecutor committed misconduct by allowing T.A. to

27   testify falsely.  (Pet. Memo. at 26-30.)  A prosecutor violates due process by obtaining a

28

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\RMW\HC old\HC.09\Hernandez457hc2.wpd

1   conviction through evidence known to the prosecution to be false or misleading. See Napue v.

2   Illinois, 360 U.S. 264, 269 (1959). To succeed on a false evidence claim, a petitioner must

3   show: (1) the testimony or evidence was actually false, (2) the prosecution knew or should have

4   known that the testimony or evidence was actually false, and (3) the false testimony or evidence

5   was material. See Henry v. Ryan, 720 F.3d 1073, 1084 (9th Cir. 2013).

6      Here, petitioner points to alleged inconsistencies between T.A.'s testimony and T.A.'s

7   prior statements to law enforcement. However, mere inconsistences in testimony do not

8   establish the knowing use of perjured testimony. See Allen v. Woodford, 395 F.3d 979, 995 (9th

9   Cir. 2005). Moreover, a closer look at the record demonstrates that what petitioner describes as

10   inconsistencies are not so. For example, petitioner claims that T.A. told the police she was not

11   afraid that petitioner would hit her, but at trial, testified that she did not resist petitioner because

12   she was afraid of him. The police report states that during the interview, T.A. stated, "she was

13   feeling scared when she saw [petitioner] on top of her because [she] stated that [petitioner] had

14   been violent with her mother and with other past relationships. [T.A.] stated that she did not

15   necessarily feel scared that [petitioner] was going to physically hit her, but that something else

16   might happen." (Pet. Ex. E at 5.) This is not inconsistent with T.A.'s trial testimony. In sum,

17   petitioner has not shown that the challenged testimonies were actually false, that the prosecutor

18   should have known them to be false, or that the testimonies were material.

19      The state court's rejection of this claim was not contrary to or an unreasonable

20   application of Napue.

21      4.   Admission of prior conduct

22      Petitioner claims that the trial court erred when it admitted evidence of petitioner's prior

23   acts of violence to prove that T.A. was not a consenting partner to the sexual activities. (Pet.

24   Memo. at 39.) Petitioner alleges that the court also improperly admitted evidence of petitioner's

25   forced oral copulation on Lisa Hernandez, as well as facts supporting petitioner's convictions

26   and uncharged acts of domestic and sexual violence against other female victims. (Id. at 40.)

27

28

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\RMW\HC old\HC.09\Hernandez457hc2.wpd

1    The state appellate court rejected petitioner's claim on both state and federal grounds.

2    The admission of evidence is not subject to federal habeas review unless a specific

3    constitutional guarantee is violated or the error is of such magnitude that the result is a denial of

4    the fundamentally fair trial guaranteed by due process.  See Henry v. Kernan, 197 F.3d 1021,

5    1031 (9th Cir. 1999).  Importantly, the United States Supreme Court has left open the question of

6    whether admission of propensity evidence violates due process.  Estelle v. McGuire, 502 U.S.

7    62, 75 n. 5 (1991).  Based on the Supreme Court's reservation of this issue as an "open

8    question," the Ninth Circuit has held that a petitioner's due process right concerning the

9    admission of propensity evidence is not clearly established as required by AEDPA.  See Alberni

10   v. McDaniel, 458 F.3d 860, 866-67 (9th Cir. 2006).  That is, the Supreme Court "has not yet

11   made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due

12   process violation sufficient to warrant issuance of the writ."  Holley v. Yarborough, 568 F.3d

13   1091, 1101 (9th Cir. 2009) (finding that trial court's admission of irrelevant pornographic

14   materials was "fundamentally unfair" under Ninth Circuit precedent but not contrary to, or an

15   unreasonable application of, clearly established Federal law under § 2254(d)).

16   Accordingly, the state court's rejection of this claim cannot be contrary to or an

17   unreasonable application of clearly established Supreme Court law.

18          5.     Ineffective assistance of counsel

19   Petitioner claims that counsel was ineffective in a variety of ways.  Petitioner alleges that

20   counsel failed to impeach T.A.'s testimony; failed to impeach other witnesses; and failed to

21   object.  Petitioner also argues that the cumulative errors of counsel resulted in prejudice.

22   A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth

23   Amendment right to counsel, which guarantees not only assistance, but effective assistance of

24   counsel.  Strickland v. Washington, 466 U.S. 668, 686 (1984).  In order to prevail on a Sixth

25   Amendment ineffectiveness of counsel claim, petitioner must establish two things.  First, he

26   must establish that counsel's performance was deficient, i.e., that it fell below an "objective

27   standard of reasonableness" under prevailing professional norms.  Id. at 687-88.  Second, he

28

1   must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a

2   reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

3   would have been different."  Id. at 694.  A reasonable probability is a probability sufficient to

4   undermine confidence in the outcome.  Id.

5                   A.   Failure to impeach T.A.'s testimony

6          Petitioner argues that counsel failed to impeach T.A.'s testimony with her inconsistent

7   statements previously made to the police or at the preliminary hearing.  (Pet. Memo. at 48-55.)

8   Petitioner claims that had counsel done so, the jury would not have believed her to be credible as

9   to her version of the events.  Specifically, petitioner alleges that T.A. testified that when she

10  awoke from sleeping, petitioner was on top of her, there was nothing between them, and T.A. did

11  not know where the blanket was.  (Id. at 50.)  However, only after the prosecutor refreshed

12  T.A.'s memory did T.A. testify that petitioner put the blanket over her face.

13         At the preliminary hearing, T.A. had testified that she could not remember if petitioner

14  put a blanket over her face.  (Id.)  The record shows that at trial, T.A. testified that she did not

15  know what had happened to the blanket that was on her, but that she remembered a blanket being

16  over her face.  (RT 178-79.)  After the prosecutor asked T.A. if she put the blanket over her own

17  face, or if petitioner did, T.A. responded that petitioner had done so.  (Id. at 179.)

18         Also, petitioner argues that at the preliminary hearing, T.A. testified that she was not

19  afraid that petitioner would hit her, T.A. stated that she did not cry after she and petitioner had

20  sex, and T.A. had told the police officer during her interview that she was not afraid that

21  petitioner was going to physically hurt her.  (Pet. Memo. at 51.)  However, states petitioner, T.A.

22  then testified at trial that she did not consent to the sex, and that she was scared and confused.

23  And, in her interview with the police officer, T.A. also stated that she was scared because she

24  had seen petitioner become violent with her mother and his other past relationships and while

25  she thought petitioner would not necessarily physically hurt her, she thought something else

26  could happen.

27

28

1    Petitioner next states that T.A. testified that after she and petitioner had sex the first time,
2    petitioner told her a story of how Adam and Eve's children slept with their children to make the
3    human race in order to convince T.A. that what they did was normal, but T.A. did not believe
4    that it was normal for petitioner to be having sex with her.  (Pet. Memo. at 51, RT 182-83.)
5    However, argues petitioner, at the preliminary hearing, T.A. was asked, "And when he was
6    telling you this story, did he say something to you to convince you that what happened was
7    okay?" and T.A. answered, "I guess.  Then he was trying to make it seem like, you know, try to
8    make it seem like everything was all right, like it was normal."  (Docket No. 44-1 at 46.)

9    Petitioner next states that T.A. testified that the reason she did not tell anyone about the
10   first rape was because she was afraid of petitioner.  (Pet. Memo. at 51-52, RT at 183.)  At the
11   preliminary hearing, T.A. testified that she did not tell anyone what had happened because she
12   was scared about "what he might have done or mostly, I was in shock, I just couldn't believe
13   what had happened and was just really confused about what was going on . . ."  (Docket No. 44-
14   1 at 47-48.)  In her police interview, the police officer report stated that T.A. said she did not tell
15   anyone about that day because she was scared about what other people might think, and did not
16   feel that anyone would believe her.  Petitioner argues that the police report is inconsistent with
17   T.A.'s testimonies that she was afraid of petitioner.

18   Finally, petitioner argues that T.A.'s statements were inconsistent regarding an incident
19   on Valentine's Day when petitioner struck her, causing her nose to bleed and blood to get onto
20   her shirt.  (Pet. Memo. at 52; RT 205-07.)  Petitioner states that other witnesses the day after
21   Valentine's Day testified that they did not notice any visible injuries on T.A., and T.A. never
22   told anyone that she was in pain from her injuries.  (Id.)

23   A review of these portions of the record show that most, if not all, these examples of
24   inconsistencies in fact are not inconsistent.  In addition, a defense attorney's decisions regarding
25   the manner and scope of cross-examination are matters left to the attorney's sound professional
26   judgment as trial strategy or trial tactics.  See Dows v. Woods, 211 F.3d 480, 487 (9th Cir. 2000)
27   ("[C]ounsel's tactical decisions at trial, such as refraining from cross-examining a particular
28

witness or from asking a particular line of questions, are given great deference and must . . . meet only objectively reasonable standards."); see also Gallo v. Kernan, 933 F. Supp. 878, 881 (N.D. Cal. 1996) ("It is well settled that impeachment strategy is a matter of trial tactics.").  This is especially true with respect to the cross-examination of an underage sexual assault victim.  An overly aggressive cross-examination could backfire by alienating the jury and eliciting further sympathy for the victim.  See, e.g., Gallo, 933 F. Supp. at 882 (finding that defense counsel had tactical reason for not attempting to impeach sexual assault victim with prior inconsistent statement in order to minimize juror sympathy); Rojas v. Adams, No. 07-0749, 2010 WL 2135633, at *15 (C.D. Cal. Mar. 23, 2010) (same).

Even if counsel's performance was deficient for failing to cross-examine or impeach T.A. on these alleged inconsistencies, petitioner has failed to demonstrate any prejudice arising from this failure.  Substantial evidence of petitioner's guilt as to the crimes was presented.  Thus, even if counsel had confronted T.A. with these inconsistencies, and given her an opportunity explain them, petitioner has not demonstrated that there was a reasonable probability that the outcome at trial would have been different.

Thus, the state court's rejection of this claim was not contrary to or an unreasonable application of Strickland.

### B.   Failure to impeach other witnesses

Petitioner argues that Josephine Hernandez, Detective Colombo, Esther Martinez, Lisa Martinez, and Officer Carl Lewis gave false testimony, and counsel failed to impeach them with them with their inconsistent statements.

### 1.   Josephine Hernandez

Petitioner claims that his step-mother, Josephine Hernandez's trial testimony was inconsistent with her previous statements.  (Pet. Memo. at 56-60.)  Specifically, petitioner claims that counsel should have impeached her testimony that T.A. did not go anywhere without petitioner, and that Hernandez had never seen petitioner cuddling or hugging T.A.

1    Regarding Hernandez's statement that T.A. did not go anywhere without petitioner,

2 petitioner states that T.A. had testified about going places with her step-father.  This is not an

3 inconsistent statement of Hernandez's.  In addition, Hernandez answered "no" to the question of

4 "Did [T.A.] go anywhere, really, other than with [petitioner]?"  (RT 276.)  The court understood

5 this question and answer not to have a literal meaning.  That is, it is reasonable to infer that the

6 jury did not understand that to mean that T.A. was literally always with petitioner.

7    Regarding petitioner's claim that counsel should have impeached Hernandez with her

8 previous statement that she never saw petitioner hugging or cuddling with T.A., read in context,

9 Hernandez was only speaking about those moments when T.A. and petitioner were in their

10 bedroom together.  (RT 284.)  This was not an inconsistent statement with Hernandez's previous

11 statement that at one time, she saw petitioner lying on the couch with a blanket over him and

12 T.A. approached him and got underneath the blanket with him because she was cold.  (Pet.

13 Memo., Ex. F at 3.)

14    Petitioner also claims that counsel should have asked Hernandez about why T.A.'s

15 mother kicked out petitioner and T.A.  According to petitioner, Hernandez had told the police

16 that petitioner told her that T.A.'s mother kicked them out when she accused petitioner of

17 sleeping with T.A.  (Pet. Memo. at 56-57.)  However, Hernandez did not testify at trial about

18 why T.A. and petitioner first moved into her house.  This is not an inconsistent statement.

19 Moreover, counsel's decision not to ask Hernandez about these statements is a matter of trial

20 strategy.  Further, evidence had already been presented that T.A.'s mother was jealous of

21 petitioner's relationship with T.A. and the amount of time they spent together.  (RT 287.)

22    Petitioner further claims that counsel failed to introduce two letters that Hernandez wrote

23 to him while he was in jail.  (Pet. Memo. at 57-58, Exs. P & Q.)  The court has reviewed those

24 letters and concluded that they do not provide statements inconsistent with Hernandez's

25 testimony.  Petitioner appears to also argue that counsel should have asked Hernandez to explain

26 some of her statements in the letters, but again, that is a matter of trial strategy.  Hernandez's

27 letters stated that "the truth needs to come out, no matter who looks good or bad . . ." and

28

1   scolded petitioner for engaging in sex when "you were the adult and knew right from wrong and

2   knew she was your daughter." (Id.)  Having these statements pointed out to the jury, and

3   allowing Hernandez to explain what she meant would give Hernandez the opportunity to

4   reinforce her thought that petitioner should have known better.

5         Finally, petitioner claims that counsel failed to elicit from Hernandez that when petitioner

6   and T.A.'s mother traveled to Reno, T.A. was crying hysterically because petitioner was still

7   sleeping with T.A.'s mother, and petitioner was spending money on T.A.'s mother.  However,

8   counsel elicited this information on cross-examination.  (RT 284-85.)  Hernandez testified that

9   T.A. was crying hysterically because petitioner and T.A.'s mother took a trip together, and

10   Hernandez stated that the way T.A. was reacting made her sound like she was talking about her

11   boyfriend instead of her father.  (Id.)

12         Even assuming that counsel's failure to impeach or elicit these statements from

13   Hernandez constituted deficient performance, petitioner has failed to show prejudice.  Counsel

14   was able to elicit from Hernandez that petitioner and T.A.'s relationship seemed more romantic

15   than parental, and that T.A.'s mother was jealous of T.A.'s relationship with petitioner.

16   Hernandez also testified that petitioner was very controlling and possessive over T.A.

17   Petitioner's argument that further questioning of Hernandez had a reasonable probability of

18   producing a different outcome at trial is not persuasive.

19                            2.    Detective Colombo

20         Detective Colombo testified that when she contacted petitioner at the jail to get a DNA

21   sample to test whether he was the father of T.A.'s baby, petitioner spontaneously asked, "Isn't

22   the statute of limitations up on something like that?"  (Pet. Memo. at 60-61; RT 319-21.)

23   Petitioner claims, however, counsel should have impeached Detective Columbo's statement that

24   petitioner's questions was spontaneous.  Rather, alleges petitioner, petitioner only asked that

25   question after Detective Colombo attempted to interrogate petitioner.  (Pet. Memo. at 61.)

26   Whether petitioner's statement was spontaneous or brought about by questioning is collateral to

27   petitioner's reaction of wondering whether the statute of limitations had run.  Counsel's decision

28

1  not to nit-pick at how petitioner's statement came about is strategic as he could have been

2  attempting not to draw added attention to petitioner's reaction.  Thus, counsel's failure to

3  impeach Detective Colombo was not deficient nor prejudicial.

4      Petitioner's other claims against Detective Colombo also go to inconsequential facts.  For

5  example, petitioner wanted counsel to ask Detective Colombo why she did not question

6  Hernandez further about T.A. getting under the blanket with petitioner, and failed to question

7  Detective Colombo about statements that Hernandez gave that could be seen to be biased against

8  petitioner.  (Pet. Memo. at 62.)  However, in light of the fact that petitioner's guilt hinged on

9  whether the jury believed his version that he had a good faith belief that T.A. consented to the

10  sexual activity, and that he did not use force or fear, there is not a reasonable probability that

11  these facts that counsel failed to elicit from Detective Colombo would have made a difference in

12  the outcome of trial.

13                3.    Esther Martinez

14      Petitioner claims that Martinez testified at trial that when T.A. came to stay with her,

15  T.A. did not disclose that she was pregnant at the time.  (Pet. Memo. at 62.)  Then later, Martinez

16  testified that she asked T.A. if she was pregnant by her own father and T.A. put her head down

17  and began to cry.  (Id. at 62-63, RT 376.)  However, alleges petitioner, Martinez told the police

18  that T.A. had responded that she was pregnant and T.A. knew who the father was, but that

19  Martinez never asked T.A. if petitioner was the father.

20      Petitioner claims that counsel failed to impeach Martinez with this inconsistent statement.

21  However, again, petitioner does not argue how this failure to impeach Martinez about this

22  resulted in prejudice in light of the fact that petitioner's guilt hinged on whether the jury believed

23  his version that he had a good faith belief that T.A. consented to the sexual activity, and that he

24  did not use force or fear.

25                4.    Lisa Hernandez

26      Petitioner claims that his ex-wife, Lisa Hernandez's testimony at trial was inconsistent

27  with her testimony in a preliminary hearing in a different criminal case against petitioner, and

28

that counsel failed to impeach her.  (Pet. Memo. at 63-65.)  Specifically, at the previous

preliminary hearing, Lisa Hernandez testified that she did not remember if petitioner attacked her

with a screwdriver in his hand, while at petitioner's underlying trial, Lisa Hernandez testified

that he had a screwdriver in his hand.  (Id. at 63.)  Lisa Hernandez also testified at the unrelated

preliminary hearing that she was not afraid of petitioner, that their relationship was not strained

and that she did not remember if petitioner forced her to perform oral sex on him.  (Id. at 63-65.)

Even assuming counsel should have impeached Lisa Hernandez, a review of the cross-

examination shows that counsel was able to elicit the fact that Lisa Hernandez was still married

to petitioner, that she has never initiated divorce proceedings though petitioner has tried to

divorce her before, that she had previously been convicted of domestic violence, and that she

never reported any of petitioner's abuse upon her to the police.  (RT 407-13.)  Petitioner does not

explain how questioning Lisa Hernandez on the specifics of petitioner's abuse upon her would

have resulted in a different outcome at trial.

### 5.  Officer Carl Lewis

Petitioner argues that Officer Carl Lewis testified about the Child Sexual Abuse

Accommodation Syndrome and stated that he did not interview any of the main parties in

petitioner's case.  Petitioner claims that Officer Lewis did, however, interview Esther Martinez

and therefore, counsel should have impeached him on that.  (Pet. Memo. at 65, Ex. L.)  However,

counsel did ask Officer Lewis if he interviewed any of the main parties, and specifically named

T.A., to which Officer Lewis responded that he had not.  (RT 432.)  These statements are not

inconsistent.  Thus, counsel was not ineffective for failing to impeach Officer Lewis about this

statement.

### C.  Failure to object

Petitioner claims that trial counsel was ineffective for failing to object to the prosecutor's

vouching for T.A., the Brady violation, and the admission of petitioner's prior acts of sexual and

domestic violence.  However, the state courts rejected these substantive claims on the merits in

either petitioner's state habeas petition, or petitioner's direct appeal.

1   Even assuming that counsel was deficient for failing to object to these specific issues, in

2   light of the fact that the state courts have rejected petitioner's claims of vouching, the <u>Brady</u>

3   violation, and the admission of petitioner's prior acts in written opinions on the merits, petitioner

4   has failed to show that he was prejudiced by counsel's failure to object.  Accordingly, the state

5   court's rejection of this ineffective assistance of counsel claim was not contrary to or an

6   unreasonable application of <u>Strickland</u>.

7             D.   <u>Cumulative prejudice</u>

8   Petitioner's argument that the cumulative prejudice of trial counsel's errors resulted in

9   ineffective assistance of counsel is meritless.  In some cases, although no single trial error is

10  sufficiently prejudicial to warrant reversal, the cumulative effect of several errors may still

11  prejudice a defendant so much that his conviction must be overturned.   <u>See Alcala v. Woodford</u>,

12  334 F.3d 862, 893-95 (9th Cir. 2003) (reversing conviction where multiple constitutional errors

13  hindered defendant's efforts to challenge every important element of proof offered by

14  prosecution). However, where, as here, there is no single constitutional error existing, nothing

15  can accumulate to the level of a constitutional violation.  <u>See Hayes v. Ayers</u>, 632 F.3d 500, 524

16  (9th Cir. 2011).

17            6.   <u>Denial of Marsden motions</u>

18  Petitioner filed four <u>Marsden</u> motions.  First, on June 16, 2004, petitioner filed a <u>Marsden</u>

19  motion after his preliminary hearing, but prior to trial.  Petitioner argued that counsel failed to

20  communicate with him regarding his defense; failed to subpoena favorable witnesses; failed to

21  perform pretrial investigations; failed to secure expert witnesses; failed to impeach prosecution

22  witnesses; failed to declare a conflict of interest; and lied to petitioner.  Second, on October 13,

23  2004, petitioner filed another <u>Marsden</u> motion repeating his earlier claims and adding that

24  counsel breached the attorney-client privilege.  Third, on November 1, 2004, petitioner again

25  raised <u>Marsden</u>.  Finally, on November 5, 2004, petitioner filed another <u>Marsden</u> motion and

26  requested a new attorney.  All four motions were denied.

27

28

1      The denial of a motion to substitute counsel implicates a defendant's Sixth Amendment

2  right to counsel and is properly considered in federal habeas. Bland v. Cal. Dep't of Corr., 20

3  F.3d 1469, 1475 (9th Cir. 1994), overruled on other grounds by Schell v. Witek, 218 F.3d 1017

4  (9th Cir. 2000) (en banc). The Ninth Circuit has held that when a defendant voices a seemingly

5  substantial complaint about counsel, the trial judge should make a thorough inquiry into the

6  reasons for the defendant's dissatisfaction. Id. at 1475-76. A habeas court should consider

7  whether the trial court's denial of the motion "actually violated [petitioner's] constitutional

8  rights in that the conflict between [petitioner] and his attorney had become so great that it

9  resulted in a total lack of communication or other significant impediment that resulted in turn in

10  an attorney-client relationship that fell short of that required by the Sixth Amendment." Schell,

11  218 F.3d at 1026. In determining whether the trial judge should have granted a substitution

12  motion, the reviewing habeas court may consider the extent of the conflict, whether the trial

13  judge made an appropriate inquiry into the extent of the conflict, and the timeliness of the

14  motion to substitute counsel. See Daniels v. Woodford, 428 F.3d 1181, 1197-98 (9th Cir. 2005).

15      The California Court of Appeal rejected petitioner's claim in a thorough and well-

16  reasoned opinion. (Resp. Ex. 10 at 9-21.)

17      In all four hearings, the record reflects that trial court permitted petitioner to air all his

18  grievances, and then allowed counsel to respond to each specific complaint. Where petitioner

19  and counsel disagreed on something, the court ultimately found counsel credible, and concluded

20  that petitioner's complaints did not warrant substitution of counsel. This court has also reviewed

21  the transcripts of each hearing. (Docket Nos. 45-6, 45-12, 46-1, 46-2.) The state appellate

22  court's conclusion that the trial court properly denied the Marsden motions was not

23  unreasonable. In light of the evidence presented at the Marsden hearings, it was not

24  unreasonable for the trial court to credit counsel's statements and reasons. Based upon a review

25  of the underlying record, the court finds that the state appellate court's rejection of petitioner's

26  Marsden claim was neither contrary to nor an unreasonable application of clearly established

27

28

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\RMW\HC old\HC.09\Hernandez457hc2.wpd

1  Supreme Court precedent, nor was it based on an unreasonable determination of the facts in light

2  of the evidence presented.  See 28 U.S.C. § 2254(d).

3       7.    Exclusion of contents of victim's letter to petitioner

4       Petitioner wanted to testify about the contents of the letters that T.A. had sent to him

5  when he was incarcerated in 2000.  The prosecutor objected on the grounds that the testimony

6  would be hearsay.  Petitioner explained that the contents were admissible under the state of mind

7  exception to show that petitioner reasonably believed that his relationship with T.A. was

8  consensual.  However, the trial court concluded that the contents were not relevant because none

9  of the charges against petitioner occurred after 1999.

10       The state appellate court rejected petitioner's claim on both state and federal law

11  grounds.

12       "[S]tate and federal rulemakers have broad latitude under the Constitution to establish

13  rules excluding evidence from criminal trials."  Holmes v. South Carolina, 547 U.S. 319, 324

14  (2006) (alteration in original) (internal quotation marks omitted); see also Montana v. Egelhoff,

15  518 U.S. 37, 42 (1996) (holding that due process does not guarantee a defendant the right to

16  present all relevant evidence).  "While the Constitution prohibits the exclusion of defense

17  evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that

18  they are asserted to promote, well-established rules of evidence permit trial judges to exclude

19  evidence if its probative value is outweighed by certain other factors such as unfair prejudice,

20  confusion of the issues, or potential to mislead the jury."  Id. at 325-26; see Egelhoff, 518 U.S. at

21  42 (holding that the exclusion of evidence does not violate the Due Process Clause unless "it

22  offends some principle of justice so rooted in the traditions and conscience of our people as to be

23  ranked as fundamental.")

24       In deciding if the exclusion of evidence violates the due process right to a fair trial or the

25  right to present a defense, the court has typically used a balancing test weighing the importance

26  of the evidence against the state's interest in exclusion.  See Chia v. Cambra, 360 F.3d 997, 1004

27  (9th Cir. 2004) (citing Miller v. Stagner, 757 F.2d 988, 994 (9th Cir. 1985)).  However, this

28

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\RMW\HC old\HC.09\Hernandez457hc2.wpd

1   balancing test, however, is a creation of circuit law and, consequently, is not "clearly established

2   law" for purposes of habeas corpus review under 28 U.S.C. § 2254(d)(1). See Moses v. Payne,

3   555 F.3d 742, 760 (9th Cir. 2009). Thus, because the Supreme Court has not directly considered

4   whether a trial court's exercise of discretion to exclude evidence, under a constitutionally sound

5   evidentiary rule, the state court's rejection of petitioner's claim cannot be contrary to or an

6   unreasonable application of clearly established Supreme Court law. See id. at 758-59.

7        Alternatively, even assuming that exclusion of the letters was erroneous, petitioner would

8   have to show that the error "'had substantial and injurious effect or influence in determining the

9   jury's verdict.'" See Brecht v. Abrahamson, 507 U.S. 619, 637 (1993). According to the state

10  appellate court, the jury did hear evidence that, despite T.A.'s statements to the contrary, she

11  continued to correspond with petitioner via telephone as well as through letters. Thus, the actual

12  substance of the letters would not add probative value. In addition, the prosecution presented an

13  abundance of evidence of petitioner's "abusive nature," the undisputed evidence that T.A. and

14  petitioner engaged in a sexual relationship, and testimony regarding T.A.'s complex feelings

15  about her relationship with petitioner.

16       A review of the state court record leads the court to conclude that the state court's

17  rejection of this claim was not contrary to or an unreasonable application of clearly established

18  Supreme Court law.

19           8.      Great bodily injury enhancement

20       Petitioner argues that there was insufficient evidence that he inflicted great bodily injury

21  on T.A. because pregnancy or childbirth should not be sufficient to constitute "great bodily

22  injury."

23       The state appellate court rejected this claim on appeal, relying on state case law that

24  previously held that pregnancy alone can constitute "great bodily injury" under Cal. Penal Code

25  §12022.7. In addition, the California Supreme Court in People v. Cross, 45 Cal.4th 58, 63-64

26  (2008), held that evidence of a pregnancy resulting from unlawful intercourse may support a

27  finding of great bodily injury, even without medical complications. The opinion in Cross also

28

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\RMW\HC old\HC.09\Hernandez457hc2.wpd

1    reiterated that "determining whether a victim has suffered physical harm amounting to great

2    bodily injury is not a question of law for the court but a factual inquiry to be resolved by the

3    jury." Id. at 64.

4         A state prisoner states a constitutional claim if he alleges that the evidence in support of

5    his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact

6    to find guilt beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 321-24 (1979). A

7    federal court reviewing collaterally a state court conviction does not determine whether it is

8    satisfied that the evidence established guilt beyond a reasonable doubt. See Payne v. Borg, 982

9    F.2d 335, 338 (9th Cir. 1992). The federal court "determines only whether, 'after viewing the

10   evidence in the light most favorable to the prosecution, any rational trier of fact could have

11   found the essential elements of the crime beyond a reasonable doubt.'" Id. (quoting Jackson, 443

12   U.S. at 319). Only if no rational trier of fact could have found proof of guilt beyond a reasonable

13   doubt, may the writ be granted. Jackson, 443 U.S. at 324. After AEDPA, a federal habeas court

14   applies the standards of Jackson with an additional layer of deference. Juan H. v. Allen, 408

15   F.3d 1262, 1274 (9th Cir. 2005). Generally, a federal habeas court must ask whether the

16   operative state court decision reflected an unreasonable application of Jackson to the facts of the

17   case. Id. at 1275 (quoting 28 U.S.C. 2254(d)).

18        Petitioner does not argue that he did not impregnate T.A., but only that his conduct does

19   not amount to "great bodily injury."  As such, his claim is premised on his disagreement with

20   the state appellate court on a question of state law.  A state court's interpretation of state law,

21   including one announced on direct appeal of the challenged conviction or one made by an

22   intermediate appellate court in the absence of persuasive data that it is contrary to the

23   interpretation of the highest state court, binds a federal court sitting in habeas corpus. See Hicks

24   v. Feiock, 485 U.S. 624, 629-30 & n.3 (1988). Petitioner presents no such data. Consequently,

25   the California Court of Appeal's determination that evidence of T.A.'s pregnancy is sufficient to

26   establish great bodily injury under California law is binding on this court on federal habeas

27   review.

28

1    Relatedly, petitioner claims that the trial court erred by instructing the jury that it could

2  consider T.A.'s pregnancy or childbirth as "great bodily injury."  (Pet. Memo. at 45.)  The state

3  appellate court rejected this claim, stating again that, pursuant to California law, regardless of the

4  particular complications or actual amount of pain endured during pregnancy or labor, pregnancy

5  and childbirth have a significant impact on a victim's health.  The California Court of Appeal

6  reaffirmed that pregnancy, by itself, amounted to significant and substantial bodily injury or

7  damage.

8    A challenge to a jury instruction solely as an error under state law does not state a claim

9  cognizable in federal habeas corpus proceedings.  See Estelle v. McGuire, 502 U.S. 62, 71-72

10  (1991).  See, e.g., Stanton v. Benzler, 146 F.3d 726, 728 (9th Cir. 1998) (state law determination

11  that arsenic trioxide is a poison as a matter of law, not element of crime for jury determination,

12  not open to challenge on federal habeas review).  To obtain federal collateral relief for errors in

13  the jury charge, a petitioner must show that the ailing instruction by itself so infected the entire

14  trial that the resulting conviction violates due process.  See Estelle v. McGuire, 502 U.S. at 72.

15    Because petitioner challenges the jury instruction based on his disagreement with

16  California law, this claim does not warrant habeas relief.

17                                    **CONCLUSION**

18    The petition for a writ of habeas corpus is DENIED.  The federal rules governing habeas

19  cases brought by state prisoners require a district court that denies a habeas petition to grant or

20  deny a certificate of appealability ("COA") in its ruling.  Petitioner has failed to make a

21  substantial showing that his claims amounted to a denial of his constitutional rights, or

22  demonstrate that a reasonable jurist would find the denial of his claims debatable or wrong.

23  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  Accordingly, a COA is DENIED.

24    The clerk shall terminate all pending motions, enter judgment, and close the file.

25    IT IS SO ORDERED.

26  DATED:  __11/25/2015_____

27                                    RONALD M. WHYTE
                                       United States District Judge

28

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\RMW\HC old\HC.09\Hernandez457hc2.wpd